IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMEKA BARNES, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 13-2438 |
| | : | |
| NATIONWIDE MUTUAL | : | |
| INSURANCE COMPANY, et al., | : | |
|     Defendants. | : | |

**February _26_, 2014**                                                                                     **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff Tameka Barnes brings suit against Defendants Nationwide Mutual Insurance Company ("Nationwide") and Victor M. Verbeke. Barnes alleges that Defendants subject her to disparate treatment because of her race in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*, and 42 U.S.C. § 1981. I exercise federal question jurisdiction over Barnes' § 1981 claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Barnes' PHRA claim pursuant to 28 U.S.C. § 1367. Defendants have filed a motion for summary judgment. For the reasons set forth below, I will grant Defendants' motion for summary judgment.

## I.  BACKGROUND[1]

Plaintiff Tameka Barnes is African American. She began her employment with Defendant Nationwide in 2002, working in Philadelphia, Pennsylvania. In 2007, Nationwide transferred Barnes to Nationwide's Trial Division Office in Conshohocken, Pennsylvania to work as a legal secretary. In November 2012, Barnes applied for, and was offered, a position as a legal secretary in Nationwide's Trial Division Office in Harleysville, Pennsylvania. Barnes

---

[1] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

accepted the position and received a $2,500 salary increase. She is currently employed by Nationwide in the Harleysville office.

The alleged discrimination occurred during the five years that Barnes worked in the Conshohocken office. Barnes' direct supervisor at the Conshohocken office was Adrienne Oliphant, Business Legal Operations Supervisor. Defendant Victor M. Verbeke was the Managing Attorney of the Conshohocken office, and was responsible for monitoring and supervising the office. During her time at the Conshohocken office, Verbeke scrutinized and monitored several aspects of Barnes' job performance.[2]

**1) Verbeke Accessed Barnes' Folder on the F-Drive**

Every attorney and legal secretary in the Conshohocken office has access to the f-drive on Nationwide's computer system. Within the f-drive, each individual has a folder with his/her name on it. Everyone has the ability to access each other's individual folders. It was routine for legal secretaries to go into the individual files of the lawyers they supported in order to look at documents. On more than one occasion, Verbeke accessed Barnes' folder on the f-drive and discovered that the folder contained personal documents, at least one of which used Nationwide's letterhead. Verbeke twice reported Barnes' storage of personal documents on the f-drive to Oliphant, Barnes' direct supervisor, because employees are prohibited from keeping personal documents on the f-drive and using firm letterhead for personal business. No disciplinary action was taken against Barnes for violating Nationwide's policies and the violations were not included in Barnes' mid-year or yearly performance reviews. Barnes

---

[2] Barnes also alleges, without any evidentiary support, that Verbeke anonymously reported to Nationwide that Barnes had accepted gift cards from vendors. However, another employee, Karen Baker, admits to making the anonymous report to Nationwide. Regardless of who made the report, an investigation occurred, and the investigator concluded that there was no evidence that Barnes accepted or used gift cards from vendors. Barnes was not disciplined for the gift card incident, and the gift card investigation was not included in her yearly evaluation.

believes that Verbeke singled her out for scrutiny and did not go into the individual folders of other employees.

**2) Verbeke Monitored and Listened to Barnes' Phone Calls**

Nationwide has a policy that employees should keep personal calls to a minimal. Verbeke monitored Barnes' phone calls to make sure she was not making too many personal calls. On one occasion, when Barnes was speaking to a Human Resources representative, Verbeke repeatedly came over to Barnes' desk to see how long she was on the phone. Verbeke also sent emails to Oliphant complaining about Barnes' phone usage. No disciplinary action was taken against Barnes for her phone usage and excessive phone usage was never mentioned in Barnes' mid-year or yearly performance reviews. Barnes believes that Verbeke targeted her for scrutiny because of her race.

**3) Verbeke Complained about Barnes' Workplace Errors**

Verbeke also sent emails to Oliphant, and other employees, complaining about Barnes' workplace errors. Over approximately five years, Verbeke sent nine emails regarding errors made by Barnes. Barnes never received any discipline for the alleged errors. Barnes believes that Verbeke targeted her for scrutiny because of her race.

**4) Verbeke Recorded Barnes' Arrival and Departure Times**

Verbeke also monitored when Barnes arrived and departed work. On more than two occasions, Oliphant spoke to Barnes regarding Verbeke's concerns about Barnes' arrival and departure times from work. Over the course of five years, three emails were sent relating to Verbeke's concerns about Barnes' comings and goings while employed at the Conshohocken office. Barnes believes that Verbeke singled her out for scrutiny and did not monitor the arrival and departure times of her co-workers.

Oliphant believes that Verbeke deliberately attempted to find some evidence against Barnes that he could use as a pretense to terminate her.  Additionally, Oliphant believes that there is a possibility that Verbeke singled Barnes out because of her race.  However, despite Verbeke's scrutiny of Barnes' performance, Barnes was never terminated.  In fact, Barnes received favorable evaluations, and appropriate raises and bonuses.  Moreover, Barnes was never placed on a performance improvement plan, and she never received any type of discipline, demotion, decrease in salary, or written warning while working at the Conshohocken office.

## II.  LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  After the moving party has met its initial burden, the nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the nonmoving party may

not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III.  DISCUSSION[3]

Barnes alleges that Defendants subject her to disparate treatment because of her race.  In order to establish a prima facie case of disparate treatment, a plaintiff must establish that: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).  Defendants argue that Barnes cannot succeed on her disparate treatment claims because she did not suffer an adverse employment action.[4]

In the context of a disparate treatment claim, "an adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal quotation marks omitted).  Put another way, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

---

[3] The legal standard for analyzing § 1981 and PHRA claims is the same for purposes of determining a summary judgment motion. *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999)  (same legal standard applies to Title VII and PHRA claims).  Therefore, the discussion simultaneously addresses Barnes' § 1981 and PHRA disparate treatment claims.

[4] Defendants also argue that the statute of limitations limits Barnes' claims of disparate treatment to those that accrued on or after May 2009.  I need not address the statute of limitations argument because Barnes never suffered an adverse employment action.

*Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999) (internal quotation marks omitted).  Additionally, an adverse employment action may be found "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions . . . ."  *Id.* at 153.

      Barnes argues that Verbeke made "disciplinary accusations" when he complained about Barnes' workplace errors, storage of personal documents on the f-drive, arrival and departure times, and personal phone usage, and that these "disciplinary accusations" qualify as adverse employment actions.  However, no disciplinary action was ever taken against Barnes as a result of these "disciplinary accusations."  These "disciplinary accusations" were never mentioned on Barnes' performance reviews.  Moreover, they never led to any significant change in Barnes' employment status.   Rather, Barnes continuously received favorable evaluations, and appropriate raises and bonuses throughout her time at the Conshohocken office.  Additionally, when Barnes applied for the position of legal secretary in the Harleysville office, she received it, along with a $2,500 raise.  Verbeke's "disciplinary accusations" did not alter Barnes' compensation, terms, conditions, or privileges of employment.  Although Barnes genuinely believes that she was treated unfairly because of her race, the negative treatment she experienced is not legally actionable because she did not suffer an adverse employment action.  Thus, Barnes cannot establish a prima facie case of disparate treatment.

## IV.  CONCLUSION

      For the reasons set forth above, I will grant Defendants' motion for summary judgment.

                                      s/Anita B. Brody

                              _____
                              ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:      Copies **MAILED** on _____ to: